Good morning. Christopher Stender, present for the petitioner, Rene De La Torre. May it please the Court. This is an immigration case where the immigration judge on November 10th, 2004 found- It would help if you- I know you're- Too tall? Way up there. Raise it up? How's that? Is that all right? If you sort of talk into the mic, that way the folks behind you can also hear. Thank you, Your Honor. Is that all right? I think it's about there, yes. Okay. Thank you. The immigration judge found the respondent in this case, the petitioner in our case, that the respondent was removable for a crime involving moral turpitude within five years after admission and that he was convicted of a one-year sentence. The basis for that finding was a conviction under Section 245A1 of the California Penal Code, assault with a deadly weapon, not a firearm, and this conviction was determined to be a misdemeanor by the State Court. The I.J. found that Mr. De La Torre could have been sentenced to one year notwithstanding that he was sentenced under Section 17B of the California Penal Code. The BIA order from June the 1st, 2006 noted that Mr. De La Torre appealed the I.J. decision insofar as it was determined that he was removable under Section 237A2AI, crime involving moral turpitude within five years after admission. The BIA adopted and affirmed the I.J. decision and further found that he also, as the I.J. found, could have been sentenced to one year in the county jail even though he was not. Taking my second argument first, I think the issue of the one-year sentence has been clearly determined by this Court's prior precedent. Two cases I think are especially on point, Garcia Lopez that dealt with this particular section of the California Penal Code. Whether or not a wobbler is a felony or a misdemeanor, this Court in Garcia Lopez previously held that that decision is controlled by Section 17B of the California Penal Code, that if the State Court determines that the conviction is a misdemeanor, then the immigration court, the BIA, is bound by that State Court determination. Also in Lafarga v. INS, also this was a question under the Arizona Penal Code, but similar holding that the State Court designation of an offense, which in Arizona is called an undesignated offense, a California wobbler offense, as a misdemeanor, was binding on the BIA for application of the petty offense exception. It's still the same determination how an immigration court will look at a sentence and whether or not it should be considered a felony or misdemeanor, what the maximum length of that sentence is. Two prior precedents from this Court have held that that determination will be decided by the State Court, and if it's a misdemeanor, then it's a misdemeanor for all purposes. The Board of Immigration Appeals agrees that a sentence modification is binding on the immigration courts in matter of song, and they apply that precedent to other immigration cases. I've been asked to address the Anbach decision in Marmolejo Campos. I would point out that I don't think this is a case where the BIA decision is entitled to Chevron deference. I think at most this is a decision where the BIA's decision is entitled to Skidmore deference. The BIA decision does not rely on any precedential decision from the BIA or any other published decision on whether assault with a deadly weapon is or is not a CIMT. There is a case on point of the BIA matter of GR. The BIA decision does not cite to it and does not rely on it in making its findings. Well, I thought one of your arguments as to why this wasn't argued to the BIA was that it would have been futile because it was so well established. That's true. However, the immigration – the administrative record does note that this was raised in front of the immigration judge. There were pretrial briefs where it was argued that the conviction was not a CIMT. The immigration judge himself, in the administrative record, states for himself that counsel has argued, and the IJ took note, that the 245A1, assault with a deadly weapon, is not a CIMT, and his conviction did not fit within the 237A2AI charge. The IJ himself, in the administrative record of page 56, states this. There was a trial brief by the Respondents' Counsel. It's in page 342 of the administrative record, and the DHS responded at page 319 of the administrative record, arguing whether or not this offense was or was not a CIMT. I think from the point of view of the – the futility doctrine, it was well established that the BIA would hold that this is a crime involving moral turpitude. You don't have any doubt, do you, that the BIA would hold this is a CIMT? Correct. However, I would also note that the BIA, in its own decision at page 2 of the administrative record, states that insofar as it was determined that the Respondent was removable under section 237A2AI, it requires the CIMT within five years of admission and a one-year sentence. So it's tripartite. And they found that it was a CIMT. Therefore, I think that getting back to the Marmolejo issue, I don't think this Court should afford the BIA's decision any deference whatsoever. If we do defer, that's the end of the case. Is that right? I'm sorry? If we do defer, that's the end of the case? If – well, correct. There was a decision that they found that it is a question of the CIMT. It's not the end of the case on the sentencing issue, however. I think the sentencing issue is clearly on Petitioner's side. The law is well established in the IAJ, clearly aired as a matter of law. Whether or not the sentencing issue is separate. So if you win on the sentencing issue, it doesn't matter whether it's a CIMT? Correct. I think the sentencing issue completely is on Petitioner's side. And if we never have to reach the exhaustion issue, the fertility issue, the CIMT Let's discuss the CIMT. Let's put the sentencing issue aside. You say we don't owe any deference to the BIA on this. But you didn't say why. How do you distinguish this from Amalejo? Well, it's – well, if you look at the decision itself, the BIA doesn't rely on any precedential decision. They don't cite to their own precedent in making this decision. So under Chevron, that's why I don't think this case is entitled to any type of Chevron deference. Possibly a Moles-Skidmore deference. Well, but it's a sort of reverse of the conversation you had with Judge Noonan. You know, they know what their precedent is. It's pretty clear what they've held. So it doesn't – they don't need to cite it every time. We know why they come out that way, because they have standing precedent that says – you know, with their reliance. And the fact that they didn't cite it doesn't mean it's not there in the background driving their analysis. I mean, they do have a precedent. They followed it. I don't see what else. But you think we don't owe deference? You said you might owe Skidmore deference. Yes, because – and I think you would have to look at the body of the decision and see whether it's well-reasoned and whether it's entitled to deference under Skidmore. There's really no analysis. It's clearly contrary to what we do. As far as this particular decision? Yeah. I mean, it's clearly – the Silva-Trevino is clearly – their analysis is different from But there's no doubt about it. They are different. They differ. And the question is, does the BIA have discretion in interpreting its own statute? Discretion that's binding on us to say, well, we are interpreting our statute, and we are going to do it in a different way. I see Marmolejo-Campos announced a two-step analysis. I think it's basically still categorical, modified categorical. I see Silva-Trevino as a three-step. It's categorical, modified categorical, and then the standard of necessary and appropriate, which is really no standard at all because it doesn't limit anything in the record. Whatever is deemed by the immigration judge to be necessary and appropriate really could be anything. The point I'd like to make about both Silva-Trevino and Marmolejo-Campos is that I think it would be appropriate that this case be remanded for further proceeding since both those cases, of course, came out long after this case was briefed. I think it's important also to note that Marmolejo-Campos and Silva-Trevino. Silva-Trevino also came out after the case. I think November 7th, Silva-Trevino came out. I didn't have my sequence straight in mind. Right. So the immigration judge, the BIA, didn't have the benefit. Have you discussed this possibility with opposing counsel? No, I have not. But it's certainly something I would look into. I also wanted to note that there is – Just for future reference, it's probably a good idea to do that. Maybe you just thought of it sitting there at the table. No, I thought of it a little earlier than that. People get inspired when they walk into this building. They get inspired by – That's a focused line, Chief Justice. But not by way of criticism, just by way of sort of future reference, if counsel were to think this is a good idea and agree, I can't speak for my colleagues, but I think we would be likely to be very favorably inclined to going along if both counsels agree. So if you were to take something like that up with opposing counsel before you're in court, she might be able to think about it. Well, no, I mean, she might be able to think about it, check with Washington, you know, whatever she would need to do rather than sort of catching on the spot here. We oftentimes do, Your Honor. I'm just – And on that note of remand – We consider it never too late to settle a case. Until we issue the judgment, we consider – a case settled is a case well resolved. Right. I would agree. But you are out of time. We'll give you a little time to have a rebuttal. May I finish the statement on the remand question? Of course. This is on a different issue, but he has his extreme hardship petition still pending. Is that correct? There's a 751 petition that's never been adjudicated. There was another petition in what's called the Form I-360 that's outside the record that was ultimately denied. That was for an abused spouse. So that has been denied now? That's not pending? That's a separate petition. It's not in the administrative record. Correct. But his application for special rule cancellation is what the immigration judge pre-permitted, finding that he could not show good moral character based on the conviction because it was a felony and a CIMT. So even if he could show extreme hardship based on his son's condition and the spousal abuse and all of that, if he – if we uphold the conviction under the CIMT, he's out of luck on the extreme hardship as well? Yes. That would pre-permit him. Just briefly, I wanted to just finish the thought on the remand. I just want to note the administrative record does not contain the conviction document. So the record is devoid. I think that's another appropriate reason for the remand. And also, the Department of Homeland Security never filed a brief to the BIA either. Really, we just have the Respondent's position. It was termed also a motion to remand to the BIA. So I just want to point out those two things. But thank you very much. Well, I'm sorry. If there's no conviction document in the record, what is the substantial evidence that supports the decision of the BIA? Well, there was – there was – I hadn't looked for the conviction document, because I sort of assumed it would be there. But how do they prove up the conviction? The immigration judge made a finding that there was a concession that he was – that he suffered this conviction under California law. The question is, is it a CIMT, and what was the appropriate sentence? There's also a separate ground of removability that under section – I can cite it to you under section 237A1DI, his conditional residence was terminated. So the judge had two grounds, not only the CIMT, but also the fact that his conditional residence was terminated. So what happens to that ground? Well, if it would stay in the record, that would be fine. And we're not contending he's not removable on that basis, although we said the 751, which would remove that condition, was still never adjudicated by the agency. And the judge said, well, I'm going to move forward because I'm going to find he has a CIMT anyway, and I'm going to block his relief under the battered spouse section of the cancellation of statute. So if you were to undo the CIMT determination, where would that put you? Well, he'd be eligible for the special rule cancellation where he'd have to just show extreme hardship. It's a lesser standard, only three years of residence. That's your 751. That's a separate form of relief. Right. It was a – at the end, there was a motion for continuance regarding that 751. I think the government trial counsel – Oyl also, and I think the last page of their brief mentioned it, whether or not the immigration judge should have continued the case for those purposes also. There are other issues that are latent in here. The record, I say – that's why I think a remand is appropriate, because there are a lot of issues that are unresolved. There's – the conviction document isn't in the record. We have, you know, substantial presidential decisions that came far after this briefing on whether or not it's a CIMT. The immigration judge didn't have access to that, obviously, because it hadn't come out yet. So, again, I think remand would be the most appropriate course of action. Thank you. Thank you. We'll hear from the government. Please, the Court. This is Dana Camilleri for the Attorney General. In this case, the Court addresses an alien convicted of assault with a deadly weapon who, despite never raising the issue before the Board, asked this Court to reverse the agency's determination and find he was not convicted of a crime involving moral turpitude. The deadly weapon that he was convicted of assaulting with was his hand with which he slapped his girlfriend. Is that right? Well, he contends that he slapped his girlfriend. It's difficult to tell from the record. There was no actual weapon other than his hand. Right, which is consistent with California penal law, as far as my understanding  But we would ask that you not consider this issue or exert jurisdiction over it, because your case law and the administrative exhaustion requirements of the INA were not met in this case. So your position is that he waived the issue but failed to raise it before the agency? Yes. Under 242D1, he is mandatorily required to exhaust his remedies. The Board never had an opportunity to consider it. This Court's decision in Mar-a-Lago only supports that the Board has the jurisdiction to consider the CIMT issue in the first instance. And they were deprived of that opportunity in this case. Is that why there is no judgment of conviction in the record? Well, the petitioner admitted all the factual allegations contained in the NTA, including the fact of the conviction, at which point DHS no longer had the burden to prove the conviction. He had conceded it. In terms of any conviction But he didn't concede it was a CIMT. But he conceded the fact of the conviction. He conceded that he was convicted. I heard that. But he stopped short of conceding that it was a CIMT, right? Right. But the conviction documents are not necessary. But he didn't contest it either? Is that what you're telling us? He didn't raise it in his trial brief to the immigration judge, no. Did he raise it before the BIA? No, he did not. So the first time this issue arises is in his brief before us? Yes. He only raised the one-year sentencing issue before both in his brief to the immigration judge and in his trial. Did the BIA pass on this? They say it was a CIMT. They said it was a CIMT, and he could have been sentenced to a year, yes. But they did not He raised it indirectly, didn't he? I wouldn't say so. And there's no analysis because he never No analysis, but they did address the issue. So, I mean, it was presented to them in some form. I wouldn't call it addressing the issue. They just stated that there was a CIMT. It was not in dispute, so they didn't analyze it any further. The immigration judge hardly had any analysis on that point. He only focused on the one-year sentencing. Now, if this Court feels that there should have been more analysis, then pursuing Is his brief in the administrative record? Yes, the brief is in the administrative record. Do you remember where it is in the administrative record? The brief to the board or the brief to the immigration judge? The brief to the board. It is on page 8 of the administrative record. As you can see, he never raises whether or not the crime constituted a CIMT. He only raises the one-year sentencing issue. Well, perhaps your adversary is correct about this. I mean, this was briefed well before the controlling precedents were issued in this case. Maybe the proper thing is to remand it back, particularly given the horrendous underlying facts and the fact that he was a legal resident, he has a compelling hardship case, all of which will be undercut substantially by a back-of-the-hand kind of analysis that he was convicted of a CIMT and could have been sentenced for more than a year. I mean, he slapped his girlfriend. That's not clear. That's what he says. There's nothing in the record to dispute that. He was charged with three felonies and two misdemeanors, including false imprisonment and kidnapping for that charge. So it's difficult to tell what happened. And since he's trying to prove eligibility for relief, it's his responsibility to provide those documents. If this Court does feel that there should have been analysis, then the government would submit that you must remand to the board. But otherwise, he did not bring up the issue before the board. What's your response on the sentencing issue? Our position is that the plain language of 245A1 and Section 19 of the California Penal Code clearly show that he could have been sentenced to one year, even as a misdemeanor. And he actually concedes this on page 342 of the administrative record in his brief to the immigration judge. He concedes that he could have been sentenced to one year. So I guess ---- How do you distinguish the cases your adversaries say are precedent that the BIA must apply the State court determinations? In this case, you've got a State court determination that he'd be sentenced under the misdemeanor component of the statute. Well, Garcia-Lopez was dealing with a separate provision of the INA of inadmissible aliens that does contain a petty offense exception for deportable aliens, which he was charged under. There is no petty offense exception. However, additionally, the statute makes clear that it's not that he ---- what the sentence was. It's what he could have, may have been sentenced to. And under the 245A1, as a misdemeanor, he could have been sentenced up to a year. He was charged under a felony. Technically, he could have been sentenced to two, three, or four years in prison, so which clearly meets the one year. But of the ---- what he was actually convicted of, your position is under California law, he could have gotten a year. Yes. That is the plain language of 245A1. As a misdemeanor, he could be sentenced. It's the judge's discretion of up to a year. Can I ask you, should we apply the new rule of the Attorney General which suggests that if it's dealt, we go back and actually the board or the I.J. would take evidence as to the actual crime? Mm-hmm. Should we do ---- should we follow that procedure as recommended? Well, if this Court feels that there needs to be further ---- I'm sorry. I don't hear what ---- If this Court feels that there needs to be further analysis, then the Court should remand. As this Court held in Marmolejo, the CIMT determination is ---- should originate with the board. There should be deference to the board. They should be the ones to interpret their statute. And the Attorney General in Silva-Trevino stated that he believes that the CIMT determination deserves Chevron deference. I'm sorry. What did the Attorney General say? The Attorney General cited Brand X and Chevron in Silva-Trevino to state that he believes that or he found that the board deserves Chevron deference for CIMT. Doesn't the Attorney General say if there's doubt, you go from the categorical to the modified to actually taking evidence? Right. Well, because he waived and never raised it to the board, the board deserves the opportunity to go through the categorical and modified categorical analysis in the first instance. So this Court should remand if this Court feels further analysis is necessary. You're not asking for a remand now. Well, we would submit that the petition should be denied because he failed to exhaust his administrative remedies, which is mandatory. This Court has held that many times, Barron v. Ashcroft, recently in Abebe, that they must raise the issue before the board. Now, if in light of... What about the argument that I heard that there was a wall of precedent in the BIA that he didn't raise the point because there was no point in raising it? There are a few cases stating that assault with a deadly weapon is CIMT. That is no excuse not to raise it to the board. This Court held in Sun, I believe Sun v. INS, that when there's a statutory requirement of administrative exhaustion, futility cannot excuse that requirement. Moreover, the board, with passage of time, different policies, has the right to amend its decision or to see the facts of this particular case and analyze it on a case-by-case basis. And there's no wall of precedent. There's one case in the ninth matter of GR, which held that it was assault with a deadly weapon under 245A1 is a crime involving moral turpitude. This Court in Gonzales v. Barber held that a conviction under 245A1 is a crime involving moral turpitude. Thank you. We'll give you a minute for rebuttal, if you wish to take it. What do you say about Sun? I'm sorry? What do you say about Sun v. INS? It does seem to say what counsel says it says, that with a statutory exhaustion requirement, there is no futility exception. Well, I wanted to address that because I think the government counsel here kind of misrepresented, because in page 56, and this is citing the immigration judge, he states, It did express a point of view that the gentleman's referring to the Respondent's circumstances do not indicate that he was, number one, either convicted of a crime involving moral turpitude or that his situation actually fits the ground of deportability mentioned in Section 237A2A. That's the I.J. speaking, right? Right. And there were briefs on this before the I.J. But you have to raise it before the BIA. Well, the BIA considered it in their decision. It's the first line of the decision in the administrative record. And I've also argued that. But their line says that the Respondent appeals the decision insofar as. Let's take the question of whether you raised it in your brief. Did you raise it in your brief? No. So it's not raised in the brief. The BIA, it's not raised, no. It was the sentencing issue is what was raised. Why, again, isn't that preclusive? If you didn't raise it, the statutory requirement. Well, again, we've argued that, fully argued the futility doctrine, that there was a wall of cases going back 45 years. Some says that there is no futility exception whether the statutory exhaustion requirement. I don't have anything to argue on that other than what we've already said in our brief. I would note, however, that regarding the sentencing issue, this case is not disposed of on the futility doctrine and failure to exhaust. Because what was briefed was the sentencing issue. And it's clearly, and as the administrative record on page 296 notes, he was sentenced under section 17 of the California Penal Code. To adopt the immigration judge's decision, you have to ignore that the state court cites 17B. And Garcia-Lopez, that the exact language under 17B.3 where this court has found that if it's a misdemeanor in the state court, it's a misdemeanor for all purposes. This case is exactly on point. Also, Oyl doesn't even address Lafarga either in their brief regarding the sentencing context and whether it should be determined to be a misdemeanor or a felony. But really this case turns completely, I think, on the sentencing portion. And there's really, you know, that is not, would not be precluded by the exhaustion argument. That only goes to the CIMT. The sentencing record is clear-cut. The counsel argues that he could have been sentenced to a year even as a misdemeanor and that the, what's your answer to that argument? Well, two points. I mean, a criminal defendant could be sentenced to anything depending on the charge. What you have to do is ignore the citation to section 17B that the state court makes. And it's conceded in the record. The immigration says, judge says that the DHS and counsel agree that this is a misdemeanor offense. There's no fight about that. It's conclusory that it's a misdemeanor. And the immigration judge says that. And DHS didn't argue it's not a misdemeanor. But you'd have to read out section 17B in the sentence. You'd have to ignore it and only look at 245A1 and section 19 of the California Penal Code. So what do you do? 17B was specifically cited. And what do you do if you look at 17B? You go to Garcia-Lopez and it states that under 17B3, there's different subsections under 17. Garcia-Lopez discusses some earlier sections. In our case, what's relevant is 17B3, which was the basis for the decision in Garcia-Lopez. And 17B3 says a wobbler offense, quote, is a misdemeanor for all purposes when the defendant is not in position of sentence and at the time of granting probation or an application thereafter, the court declares the offense to be a misdemeanor. This was conceded by DHS at trial. Immigration judge said there's no fight about this. It is a misdemeanor. We're going to ‑‑ all parties agree on that point. No issue there. So you have a case that's on all fours with this case, and that's Garcia-Lopez. And also you could look to Lafarga. I guess I'm still not sure I understand your answer. It is a misdemeanor. Nobody doubts that it's a misdemeanor. But it's a misdemeanor that can be punished by a full year in prison. No. No. That's what counsel says, and that's what I'm asking you to. So you dispute that under California law, your client could have been punished for a year in prison ‑‑ a year in jail. Okay. Theoretically, could it have happened? Sure. He could have been ‑‑ and he also could have been charged under other sections of law, and he also could have been sent to state prison. But the fact of the matter, he was not. We're dealing with not theoretical possibilities, but what actually happened. And that's what Garcia-Lopez and Lafarga says. If you just listen carefully and just answer my question rather than going off, we're going to get a lot farther. Once they decide it's a misdemeanor, counsel argues that he could have gotten a year behind bars. Is that right or not? Do you dispute that? That's what they've argued. I would dispute that. I don't think that's true, because it reads out the definition of a misdemeanor in California. Okay. So if we look at the California law and we determine what he could have gotten, we will find that he could not have gotten a year behind bars. Correct. That's what we've argued. And if you're wrong about that, you lose. On that issue, yes. Okay. We will look into it. Thank you. Thank you. Case is argued. We'll stand submitted.
judges: Kozinski, Noonan, Edmunds